Thank you, Your Honors. May it please the Court, my name is Edward Kaye, representing the defendants, Maritz Inc. and Maritz Travel Company. I will refer to them as Maritz during the argument. This case concerns the construction of an indemnity provision in a contract between GM and the action also concerns GM's insurer, and I'll refer to both as GM. The parties have stipulated that Michigan law applies to this dispute. Your Honors exercised de novo review in this appeal. This means that you're not bound by the district court's decision. You can review the indemnity provision independently of the district court's conclusions and determine whether it applies in this case. The genesis of this dispute lies in a hot air balloon accident in which two people died. Those people were attending a General Motors-sponsored event in Arizona, a four-day paid vacation for the best-selling Chevrolet dealers in America during a four-month period of time. GM had contracted with Maritz to plan and promote the event, and one of the activities that Maritz had planned for the Chevrolet dealers with GM's approval, among other activities such as golf, was to take a ride in a hot air balloon. And there was an accident involving the hot air balloon, and it is undisputed that the accident was caused by pilot error or improper replacement equipment or a combination of both. It's also undisputed that none of GM's property, whether tangible or intangible, had anything to do with the balloon accident. The indemnification provision appears in what is called May 1986 Terms and Conditions. The purchase order between Maritz and General Motors was entered into in 1995, so obviously these May 1986 Terms and Conditions had really little relationship to the purchase order. And the operative language in the indemnification provision, and this is paragraph 16, provides that if seller, and that refers to Maritz, utilizes the, quote, property of buyer, close quote, and the buyer refers to GM, a seller shall indemnify buyer for damages to any other person arising from, quote, from or in connection, close quote, seller's use of the property. We have two arguments why the indemnification provision does not apply to the balloon accident in this case. First, the term property of buyer, and may I interrupt myself a minute? I would like to reserve five minutes for rebuttal. You keep track of your own time because that's the total. Thank you, Your Honors. The term property of buyer is not defined anywhere in the terms and conditions, but the same words are used in two other provisions which reflect and those two other provisions, one concerns bail property, one concerns inspection. They reflect that property of buyer is denoting tangible personal property. In fact, when you look, if you read the terms and conditions front to back, this is the kind of terms and conditions GM uses with its vendors who are selling auto parts to GM, not planning and promoting a tour. Let me ask you this. Where, in your view, did the district court go wrong then? This all sounds very persuasive. Why did it go wrong? Well, if I can cut to the bottom line or cut to the chase, so to speak, I think that the district court was persuaded, and it's an argument that General Motors is making to Your Honors this morning, that we became the absolute insurer of anything that would have happened during this event. And that instead of the indemnification provision stating that we were liable for damages arising from our use of GM's property, the indemnification provision actually said, which it doesn't say, that we are liable for any damages arising from or in connection with the Perkins Challenge event. And it doesn't say that. It doesn't say that we are liable for any damages arising from or in connection with the purchase order under which we are to promote the event or the Perkins Challenge event. It only says we are liable for any damages arising from our use of GM's property. But that includes intellectual property. Well, our contention is that it doesn't. But assuming, arguendo, it does, our view is that Michigan law does require some sort of causal connection between the use of the property and the injury. And the use of the property had nothing to do with the balloon accident. That was caused by pilot error. Well, the property, if the property includes intellectual property, then you were promoting the whole balloon operation in the, was a promotion for GM, was it not, using GM's intellectual property? Well, yes, you'd have to say that because the target here was Chevrolet dealers. So obviously, in order to, the carrot was the four-day trip at the Phoenicia, obviously the Phoenician, I'm sorry. Obviously, to attract the GM, the Chevrolet dealer, you'd have to say this is a Chevrolet event. Right. Okay. And there was nothing on the balloon itself that says GM? Nothing. Nothing on the balloon. Nothing. So that but for the promotion of this as a GM, I assume that the balloon ride was advertised as part of this? Which is one of the activities along with golf, along with swimming. I mean, if there was a swimming accident, then are we liable as well for swimming accidents? If somebody was to, if the Phoenician served bad food, we would be liable for the tomain poisoning arising from the service of bad food at the Phoenicia because we used the Chevrolet name to promote the event. We did not become the absolute, I'm sorry. Is that, that's a similar question. I suppose the argument is, yeah. Well, but that's not what the indemnification provision says. The indemnification provision states that the injuries have to arise from or in connection with the use of the property. If we didn't use any property and that resulted in somebody obtaining, somebody having tomain poisoning, then there's no connection between the use of the property and the tomain poisoning. There's no connection between the use of the Chevrolet name and the balloon accident. If they, if GM wanted us to take your honor's argument to its logical. We're not making the argument. We're just trying to figure out. But the observation, if you took the observation to its logical extreme, we're liable for everything that happens at this event from the time the participants leave their house until the time they come back. Now, if GM wanted that, they could have said that in the indemnification provision. Well, I'm not sure. Was the balloon ride part of the package that Moretz provided? Well, yes. It was part of the activities. We were to plan and promote and develop activities for the guests to partake in once they got to the Phoenician. Looking at the particular number 16, that's the crucial indemnification provision, where does it say about use? 16, it says, or any other person arising from or in connection with seller's performance of work or use of buyer's property. It's the, at our page 8 in our brief, it would be the third line from the end of the quote, your honor. How about in connection with seller's performance? See, it's the or, it's or use of the buyer's property. Well, there's, you'd have to read performance of work and consistent with the beginning part of the indemnification provision. If seller performs any work on buyer's premises or utilizes the property of buyer, whether on or off buyer's premises, it's undisputed that we were not performing any work on the buyer's premises. And that's conceded by GM. Well, wait a minute. I'm, the whole key is this indemnification provision. That's why I'm trying to, to get the actual terms that you're using, because it says, or utilizes the property of the buyer. That would be, that would be if, if property includes the intellectual property. Correct. Whether on or off the premises in connection with seller's performance of the work. Now, why, why wouldn't, why couldn't that be read in that way? Well, no, no injuries arose from our performance of the work. Again, the, the performance of the work was to plan and, and, and plan a tour with, with various activities. In connection with. But there'd have to be some sort of causal connection between, under Michigan law. It doesn't say cause, it just says in connection with. I know, I understand it says in connection with, but under the Michigan law we've cited to your honors, we've, we've established that there has to be some sort of causal connection between the actual injuries for which the indemnity is sought and the, and either the performance of the work or the buyer's property. We were not, we were not piloting the, we were not piloting the balloon. In the Michigan authority you cited, that Shinneberger, the clause there, it, it, it wasn't quite, it wasn't worded in quite the same way that this one was. I understand that your honors. The, the, the claim has been made that it was an insurance contract, but it's kind of like an indemnification agreement. And it certainly construed one of the, one of the phrases within the, within the provision arising from the insurance contract. Arising out of, we feel that arising out of, originating from, resulting. Arising out of inherently suggests some kind of causal link. And in connection with strikes me as, as someplace possibly between a couple extremes. You can have a direct causal connection caused by, I think, arising out of as opposed to that. And then you can have connection as watered down as like existing in the same space and time, but nothing really linking the two. And that strikes me as clearly too far along the line. Now, is there anything from Michigan that speaks to the, or, or any other jurisdiction? What would you cite to a Michigan court with regard to the phrase in connection with? Well, I think the, the Regan case that we've cited in our brief certainly would speak to that. There's a case in which the defendant was transporting gasoline and had an indemnification agreement. And there was a criminal attack upon the plaintiff's property. And the, and the party seeking indemnity sought to, to hold the defendant liable under that indemnification agreement. And the court held that that's, that the criminal attack is too remote and had nothing really to do with the sale of gasoline to the, to the, to that, to the indemnity. So that no indemnity, no indemnity was owed. In, in, in much the same way here, our use, just using that Chevrolet name to entice the people to come to the event, which, you know, was in the, in the big scheme of things, all part of the GM plan to sell more cars and add to its profit line, had nothing to do, again, with the balloon accident. If, if GM, again, wanted us to be the absolute insurer of this entire event, like the indemnity agreement in GTEC, we cite a case called Daimler Chrysler Corp versus GTEC. It's a Michigan case, published Michigan decision, so there can't be any gripe about us using unpublished Michigan decisions. In that case, the indemnification agreement provided that the indemnitore was liable for indemnity based upon the entire contract. Our agreement does not say the entire contract. Our agreement says use of GM's property. Well, let me, let me just go back to your analogy of the food poisoning at the Phoenician. It, who selected the Phoenician? I believe it was, it was the, the, the, the, the, under the terms and, well, under the, the, the bid requirements, I think the, between GM and Moritz, it was supposed to be at the Phoenician or some other, you know, world class hotel. So I believe, certainly Moritz would have, would have. They picked that as the prototype of the. But certainly with GM's, certainly with, you know, with GM's approval. I mean, with the balloon, for example, the balloon ride. I mean, initially GM wanted the balloon ride out for costs reasons. And then someone from GM came down to Arizona. He took a balloon ride. He said, this is great. Put the balloon ride back in. So obviously, you know, GM is. GM presumably had nothing to do with the selection of the particular vendors. So moving away from the hotel, it, it, it wouldn't be unreasonable to have a provision that said, look, whatever you're responsible for setting up, you're responsible for. Period. Now, I understand this doesn't say that, but it's not beyond the pale that someone could say, look, we're leaving it to you to figure out who it is you're going to hire to give us these rides. I understand. You could say that. I understand that. But again, if you wanted to make us the absolute insurer of every loss that could have happened during this event, you would have used different language then. Well, I guess that's the issue is whether this language does that. Well, it's kind of like trying to fit a square peg into a round hole, I think. Well, you keep saying use, but what do you do about the word or, or use? See, use wasn't, wasn't the, I'm looking at everything or any other person arising from or in connection with the seller's performance of the work or use of the buyer's property. I'm not, you haven't explained to me what you do about the word or. Well, it's in the either one. It could, if there, if there, if it arose from either one, there would be indemnity. But again, we did not. Well, then, all right. Then use isn't the essential word, is it? No, it's not. I agree with Your Honors. It's not. But for the reasons I've stated, I mean, the work, there'd be the same causal requirement with the work, and there's nothing we did with the work that in any way caused the balloon accident. Yeah, but it didn't say cause. I understand that, but our argument is, is that Michigan would adopt some sort of causal requirement between the injury and either the performance of the work or the use of the property. Okay. Thank you, Your Honors. I have one other question. Do you contend that this provision is ambiguous or not ambiguous? I think it's clear on its face that it does not apply within the context of the agreement to tangible personal property. So it's not ambiguous. I'm saying it's not ambiguous. So the position of possibly it being ambiguous and being improper for a summary judgment would not be something that we would possibly send back to the court to interpret the intent of the parties? That's Your Honors. You know, I'm familiar with the – I'm not taking the position, but I'm familiar with the rule that, you know, despite the fact that both parties have cross-moved for summary judgment, that this Court can do what it wants to do. If it thinks there's an issue of fact, it can send it back. Well, I'm trying to find out what your position was. You say it is not ambiguous. My position is it's not ambiguous. Okay. Thank you. Thank you, Your Honors. Mr. Struble. May it please the Court. My name is Wayne Struble, and I represent General Motors Corporation. What the district court did not do wrong is it did not try to rewrite the contract for the parties. Distilled to its essence, that's point – that's Moritz's position in this case, that this Court should write two new words into paragraph 16 that are simply not there. Moritz says that this Court should rewrite the provision to say – to provide indemnity for only any loss causally arising from or causally connected to the use of GM's tangible property. The word tangible is not part of that provision, nor is the word causation. And that, quite frankly, is where Judge Rosenblatt – what Rosenblatt decided, is that the parties did not seek those words. Okay. He wouldn't – he wouldn't write those words in, because if he wrote those words in, you'd get a different result. The concern I have is that I'm not so sure that the contract without those words is so clear that it says that Moritz is on the hook for anything that happens, which apparently is the argument being offered up by General Motors. What's the connection between the trademark, or the name Chevrolet, and the accident that causes us to be here? The sole purpose of the Perkins Challenge was to build brand loyalty to General Motors. I mean, in literally the blink of an eye these days, a Walzer Ford can become a Walzer Chevrolet or a Walzer Toyota. Dealers switch allegiances all the time. And it's very important, therefore, General Motors, that it built brand loyalty, and it took – and it's particularly among its top customers, its top dealers, I should say. Hence, everything in this event was built around the Chevrolet name and the Chevrolet logo. From the Chevrolet travel registration card, to the Chevrolet travel team, to the Chevrolet Genuine Classic Reception, to the Chevrolet Hospitality Desk, everything was built around the Chevrolet name and its logo. What's more, even this balloon ride was built around the Chevrolet name and logo. No, the logo was not on the balloon itself. That's undisputed. But the logo and the name were used to promote this balloon ride. What did Moritz tell the dealers? Do you think anybody took the balloon ride because they saw the bowtie emblem there? I mean, the connection seems pretty transitory, doesn't it? This really – would you want to answer that? Yes, I'm trying to finish the thought, and I appreciate that this is a critical question. The point is that under these circumstances, you can't say that there's no connection at all between what the objective of the use of GM's property is, namely to promote this brand loyalty, and this balloon ride. They were told the Chevrolet early birds, these same types of dealers who have this, you know, desire to do well, to sell, you know, to get the worm, the Chevrolet early birds were the ones who would come out. It was only the Chevrolet participants. Those were the words in their brochures. But that covers everything that happens, from the moment that they get on the airplane, wherever they are, to the time that they get back on land at their hometown, doesn't it? On the contrary. On the contrary. It applies – first of all, it applies only if there's a cause of action against General Motors. I mean, if there's no cause of action against General Motors, then obviously there's no indemnity. I mean, the Tomain examples and all that are, you know, wonderful hypotheticals. But if the injured party doesn't have a cognizable cause of action against General Motors, then obviously it's not an injury. That's not quite true. Indemnification covers the lack of a cause of action as long as somebody brings one. Yes. I mean, GM's not saying it was liable here. It wound up settling for its own reasons. But there are other examples, Your Honor. The indemnity provision does not cover, does not include, or does not require indemnity when the loss is exclusively due to the negligence of General Motors. If the loss is due to the sole negligence of General Motors, there's no indemnity. That is a provision written into that indemnity provision. There's another example. Well, that carves out a section, but it still leaves the operative language we're looking at is covering the universe. No, it doesn't. If, for example, it only covers the activities that were planned, promoted and administered by Moritz. Suppose that I was a dealer. I came to town and I had a sister in town. I wanted to go see her. It was not an activity that was planned, promoted or administered by Moritz. And something happened to me. Then obviously that type of situation would not be covered by the indemnity provision. Let me ask you this. If they come to Phoenix, Moritz contracts with a limousine service to meet people. Says, here you are. The limo has an accident on the way to the Phoenician. In your view, that is, that's in connection with the work. Yes. If they didn't contract with the limo service and the people get off the plane and they take a limo on their own, that's not in connection. Correct. So it's not a portal-to-portal, you know, birth-to-grave type of indemnity provision that's being portrayed here. It's awful close. It's only those activities that Moritz planned, promoted and administered. So in connection with the seller's performance of work means essentially anything that anybody does in this, within the. . . The confines of this program, yes. This program. And there's a good reason for that, you know, policy-based, if you will. The idea of indemnity is that you try to shift the loss as close as you can to the source of the cause of the loss, because the person closest to that cause is the person. . . That's tort law. No, that's tort law, and there are tort causes of action here, but this is contract. This is a standard form contract drafted by GM, adopted by GM, standard purchase order. I don't know that we look to the policy as to who could best address the problem. We're talking about interpretation of a standard form contract. No, I'm talking about policy, not in terms of contract versus tort law, Your Honor. I'm talking about it in terms of trying to understand the intent of the parties, and it's the intent of the parties that governs here. Well, perhaps, but Moritz had nothing to do with the language. I'm not sure how this language reflects an intent on the part of Moritz to be liable for everything that happens. Remember, Your Honor, under Michigan law, the intent of the parties is not determined based upon the language of the contract only. It's also determined based on the surrounding circumstances and the situation of the parties. And the situation of the parties is that General Motors makes cars. It doesn't know a doggone thing about running a reward-cented program. Moritz portrayed itself not only as the largest in the country, but the largest in the world. It said, we will pre-trip every event for you. We will take care of every detail for you. Now, if Moritz wanted to hire Show Me Arizona or wanted to hire, you know, get carried away in order to conduct a balloon ride, then it had its opportunity in its contract with those people in order to insert an indemnity provision that would cover its losses. But General Motors, more removed from it, I mean, if you just think about the arrangement, the situation of the parties, and therefore what the intent of the parties would be, is that we are giving you, Moritz, responsibility. And Moritz is saying, we're going to take responsibility to put on a best-in-class event for you. We will do everything for you. Well, with that responsibility, then, comes the responsibility to cover losses. And if they want to contract that to a third party, then, by God, make sure that that party doesn't. I understand that you could have a term that says, we take responsibility for everything. Well, I want to find out what in this language should suggest to a vendor that because the vendor is going to be required by GM to use the name Chevrolet and a little bow tie, that because those emblems are going to be used, thereby Moritz becomes responsible for anything that may happen nearby those emblems. The language just doesn't seem all that clear to me that tells the vendor, you're on the hook for whatever happens. In this language, in the context of the circumstances of the making of the contract, in terms of the situation of the parties, Your Honor, I suggest that it does make sense. It does make sense because Moritz is saying, we will do whatever we can to promote your brand through this first-class event. If we were a mouse in the corner at the time of contracting when these representatives met, I think we could bet our bottom dollar that Moritz said, don't worry about a thing. We know how to do this. Well, then the contract should say, don't worry about a thing. I mean, but, see, you're giving me what's surrounding the contract. I'm looking at a standard form contract that does say, in connection with. And that's why I really want to take you back to where you were starting, because what exactly is the connection between the intellectual property, which is the property being put forward under the terms of the contract? I mean, frankly, I think the contractor is probably drafted with the idea of tangible property. But for this purpose, except your proposition that property is not limited to that, okay, we've got trademarks here. So we've got trademarks. What's the connection between the trademark and what happened? Your question was in two parts, and let me just quickly dispose of the first. As long as we understand, Your Honor, that under Michigan law, under the Triple E decision, it is not just the language, the exact in connection with, which you're focusing on, but it's also the circumstances of the making of the contract and the situation of the parties that needs to be taken into account. As long as we understand that. But then in answer to your question, the connection is that you can't take an event whose overall purpose is to promote brand loyalty and to reward dealers and parse out parts of that which are covered and parts of that which are not. I mean, the fact that this balloon tragedy occurred obviously detracted from the overall aura and feeling, the good feeling that General Motors was trying to create for its dealers that cast a pall over the whole rest of the event. And that's just a reverse type of approach to this, Your Honor, to illustrate that you can't parse out part which says is connected with and part that is not connected with when the overall objective is to promote that brand loyalty and to promote that dealership. I thought the district court held, now I'm held that this was in connection with the use of buyer's property. Yes. And the property was intellectual property of the promotion. Yes. Are you, and you seem to be arguing, because that's a, that's pretty, that's pretty attenuate. Your argument this morning appears to be more that it's in connection with the seller's performance of work. No. Oh, you're not saying that. No. I'm saying that it was in connection with the use of GM's property because they also used GM's property to promote and plan and administer this balloon ride. Well, it's the same thing, isn't it? No. The way that you're using the use of property. Well, that's how you use. Because the promotion is also the services. Anything in connection with the services. No, that's how they used the intellectual property. That's how they used the intellectual property. Well, how did they exactly use the intellectual property? They used the Chevrolet name in connection with the balloon ride. They said, Chevrolet early birds, please come to this event. Chevrolet participants only get to enjoy the beauty of the Arizona desert at sunrise. They made this Chevrolet event. That's the way their brochures were written. That's the way the itinerary was written. But it's part of the overall package of what they were providing to us. Here's another way to look at it. And perhaps. Well, before you do that, the question I've been wanting to ask is, you keep mentioning what the intention of the parties would be. Yes. That was one of the things that surprised me about Moritz's oral argument, is that it would seem to me that there's a legitimate question as to what the intention of the parties really was. And I wonder why it shouldn't be sent back for that determination as a question of fact. Moritz, Jim, and it's one of those circumstances, Your Honor, where we take diametrically opposite views of the same language, which we happen to believe is clear. And I've got to say, if I were looking at this right away, I don't think I would be thinking about intellectual property. Usually this sort of thing, when you're indemnifying like that, it's the use of some of the physical property of the other party. This intellectual one is what makes it attenuated in my mind and therefore makes it somewhat questionable about what the parties were really intending. But taking into account the situation of the parties and taking into account the circumstances of the contracting, which are the other two prongs of how you determine intent under Michigan law, it was very clear that intellectual property was part of this whole contracting scheme because there was no way that the parties were really intending. Kennedy, wouldn't that be the question of fact that the district judge would be looking at, is you keep saying in connection with what the situation was between the parties and so forth, there's nothing in the language that says anything about the situation of the parties. That's a factual matter, it seems to me, as to what the parties were thinking about. I would suggest, Your Honor, it is not a factual matter because Moritz does not deny that property under the ordinary and plain meaning of the term encompasses intellectual property. They didn't – not only on appeal they did, but down in the district court, they did not deny that part of this contract was the notion that they would use GM's intellectual property. They did not deny that the only way that they could fulfill this contract was to use GM's property, because after all, if they didn't use the logo, if they didn't use the Chevrolet name, then they couldn't accomplish the purpose for which this contract was entered into. The other thought that I was going to try to interject on the in connection with is this. Think about this in terms of when we write a release. You know, perhaps there's some dispute, a contract dispute between the two parties, the parties enter into a settlement agreement, then there's a release. And what are the magic words we always use as lawyers to try and make sure it covers everything possibly connected with or related to the dispute between the parties? We use the phrase arising from or in connection with. It's viewed as the magic words, Your Honors, that this is the way we take security in the notion that we have covered everything related to that transaction. And the same thing applies to this case. And the question becomes it's related to that transaction. It's not a general release. It doesn't give away everything. So the question becomes, okay, there's a line to be drawn. Where do you draw it? And I hear your argument. I'm not saying that there's no point to it. But a phrase like in connection with, I referred before to a continuum. I mean, you can have two things present at the same time in space. Is that enough of a connection to fall within the terms of this provision? You asked the question whether there was any Michigan case which helped us understand what this phrase in connection with meant. Counsel referred to the Reagan case, which, by the way, is a Louisiana case. It's not a Michigan law case. He mentioned in a different context the GTEC case, which is a Michigan case. And that Michigan case, as close as it came to help define what in connection with means, it was to say that there was some sort of logical association between the loss and the event. And I submit there's a logical association between a Perkins challenge, which was designed for one purpose and one purpose only, which was to promote the GM brand and an event which used it. Well, let me bring you back to the language of the contract, because I'm still a little confused here. You say that it's not in connection with the services rendered under the contract. It's not the performance of work. Performance of work. Performance of work on GM's property. Property. Yes. And that's the way you read that. So it has to be in connection with the use of property. It has to be in connection with Maritza's use of GM's property. Yes. And property includes intellectual property. Yes, it does. So anything that promotes, that anything that arises out, that they do arising out of the promotion of the overall Perkins challenge is in connection with the use of property. Yes, ma'am. And what is your interpretation of the intellectual property provision? How does that relate to the intellectual property provision? The intellectual property provision, if you read it closely, Your Honor, says that that protects GM's rights if Maritza had violated the intellectual property rights of some third party, for example, Coca-Cola or whatever, during the course of this contract. The indemnity provision covered where they used GM's property. If you read that, I believe it's paragraph 14, it has to do with violations of the intellectual property rights of another for which another might, a third party might come against General Motors, and then GM would pass that obligation to defend and pay any liability to the third party. But it's third party intellectual property in paragraph 14. It's GM's property in paragraph 16. I have one question. You say that in connection with seller performance is not what you're relying on. You're correct, Your Honor. Why is that? It seems like that's your best position. Otherwise, all the questions I was asking on the other side about or use, so that does require the use of the buyer's property not in connection with the performance. Perhaps it's more accurate to say that I did not rely on that provision because the district court did not rely on that provision. Obviously, this court can rely on any provision or make any interpretation. We're talking about what you rely on. And you just told Judge Schroeder you don't rely on it. Yes. When we briefed and when we argued this, we relied on the way that the district court analyzed the issue. But that does not prevent this court from sustaining the judgment in any other available court. It does prevent the court from relying on something you don't rely on. That's true, Your Honor. Giving a victory, you're willing to take it, huh? You know, simply put, we tried to come into this court and tell you why we thought Judge Rosenblatt was wrong rather than to say, but alternatively, he was right this way, too. I'm sorry, why he was right rather than alternatively why you could, you know, do it some other way. Thank you.  Thank you. Thank you, Justice. Your Honors, let me first state that to Judge Hugg and to the Court that I don't strive to surprise the Court during oral arguments. But there is an argument along those lines in our reply brief that, you know, I think  for GM to contend that we became the absolute insurer of every activity that was connected with this, the $700,000 fee kind of bandied about in their brief, there's no record site for that. The whole bid amount for this project, including land transportation and air transportation, amounted to $990,000. I mean, that was the bid budget, $990,000. The land program and air transport fees were about $888,000. Now, excuse me. Aren't we then getting into what I think is that the intent of the parties is important? I understand that. I understand that. Because that's what you're talking about. Well, we've used that argument to say that it's absurd to think that we'd expose ourself with unlimited exposure that could run into the billions of dollars for a $100,000 fee. Well, if that's the case, then the judge should be considering what the intent of the parties was rather than just the cold language of the indemnity. I understand that. And to answer Your Honor's question, though, we did not, you know, our briefs were based upon the fact that we believe the language in the indemnification provision is plain and refers to tangible property. So we can't consider the amount of the $750,000 and all that. Well, I think you can in considering their argument that we'd open ourselves to an open-ended exposure for a $100,000 fee. That's an absurd way of looking at a contract. And this Court can't construe contracts to reach an absurd result. Just a brief, when Merritt says that we did or GM says we did not deny that the property also fell within the ambit of intellectual property below, I mean, I don't see that raised in their brief on appeal. And I don't see where that's in the record at all. But what was the argument made below? I think the arguments that we made below were the same arguments that we're making now before this Court. And there's no indication in their briefs that any of the arguments we made on appeal had been waived because they were not made before the trial court. That's my only point. I'm rapidly running out of time. I'll suggest to Your Honors that I stand on my briefs for further argument and ask Your Honors to reverse the judgment of the district court. Okay. Thank you, counsel. Thank you, Your Honors. The Court appreciates argument in this interesting case. The case is submitted for decision. The next case, Larios v. Yuma County Sheriff, is submitted and on the briefs it is so ordered. And we'll hear the next case, which is Faria v. Astru. And I may be mispronouncing the appellant's name. Thank you.
judges: Hug, Schroeder, Clifton